UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS ALFARO, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, *et al.*,<br><br>　　　　　　Defendants. | Case No.: 3:17-cv-00046-H-KSC<br><br>**ORDER RE JOINT MOTIONS FOR RESOLUTION OF DISCOVERY DISPUTES [Doc. Nos. 36, 38]** |

Presently before the Court are two Joint Motions for resolution of discovery disputes. [Doc. Nos. 36, 38]. The parties' first Motion addresses Interrogatories put to defendant, City of San Diego, by plaintiffs and allegedly insufficient answers thereto. [Doc. No. 36]. The second Motion addresses documents or information withheld by the City of San Diego on the basis of various privileges, which the plaintiffs argue are wrongly asserted. [Doc. No. 38].

Section I of this Order addresses the issues raised in the first Motion [Doc. No. 36]. Sections II and III address the issues raised in the second Motion [Doc. No. 38]. The Court's ruling as to each Motion is explained in greater detail below.

/ / /

1

I.   **Discovery Dispute Regarding Interrogatories**

    A.   **The Boilerplate Portions of Defendant's Interrogatory Answers Will Not Be Considered by the Court**

For each of the 14 contested Interrogatories, defendant, City of San Diego, issued the same boilerplate objection at the outset that contained numerous independent potential reasons not to respond:

> The City objects to this interrogatory on the basis that it is vague, ambiguous, overly broad, indefinite as to time, and without reasonable limitations in its scope. Additionally, the City objects to this interrogatory on the ground that it calls for a legal conclusion. The City also objects to this interrogatory as seeking information protected as attorney-client privileged and attorney work-product. Subject to and without waiving these objections, the City responds: . . . .

[Doc. No. 36, at p. 6]. The City would then follow the above paragraph with a specific objection.

Federal Rule of Civil Procedure 33 governs interrogatories to parties. *See* Fed. R. Civ. P. 33. "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). Finally, responses to interrogatories must be verified. Fed. R. Civ. P. 33(b)(5) ("The person who makes the answers must sign them, and the attorney who objects must sign any objections.").

Nonspecific boilerplate objections to an opposing party's interrogatories are "inadequate under Federal Rules of Civil Procedure 33 and 34." *Solomon v. Jacobson*, No. EDCV 15-1453-VAP (JPRx), 2016 WL 6039184, at *2 (C.D. Cal. Apr. 1, 2016); *see also Romero v. Securus Techs., Inc.*, No. 16-cv-1283-JM-MDD, 2017 WL 4621223, at *2 (S.D.

Cal. Oct. 16, 2017) (explaining that defendant repeatedly recited "disfavored boilerplate objections" in responding to five interrogatories).

The manner in which defendant deploys boilerplate objections demonstrates that they are without substance. Indeed, for *every* interrogatory particularized response provided, defendant first made a boilerplate objection.[1] The Court recognizes the paragraph is an oft used tactic to avoid waiver of some future objection. But it also needlessly complicated the dispute, causing plaintiffs to object to language in the boilerplate paragraph that never constituted the true basis for the defendant's objection. The purpose of requiring specific and particularized objections is to ensure clear communication between the parties and avoid disputes like the one now before the Court.

Consequently, the Court will only consider the portions of defendant's objections that come after the colon of the boilerplate paragraph.

B. Interrogatories at Issue

***Plaintiffs' Interrogatory Nos. 1 and 2*** are contention interrogatories[2] seeking "all facts" supporting the potential assertion by defendants (1) that Alfaro "was not entitled to overtime pay while working for SDFD as an ERO", and (2) that Alfaro "engaged in 'fire suppression activities' while working for SDFD as an ERO." [Doc. No. 36 at pp. 4, 6]. A contention interrogatory "should not require the answering party to provide a narrative account of its case." *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-405 (D. Kan. 1998). Courts "will generally find [contention interrogatories] overly broad and unduly burdensome on their face to the extent they ask for 'every fact' [or 'all facts'] which support[] identified allegations or defenses." *Id.* at 405. "Interrogatories may, however, properly ask for the 'principal or material' facts which support an allegation or defense."

---

[1] For example, following the boilerplate paragraph, defendant's answer to Interrogatory No. 9 states that the Interrogatory is overbroad in requesting "each and every date that a communication occurred." [Doc. No. 36 at p. 13]. The boilerplate language is vague and duplicative of defendant's later argument.

[2] A "contention interrogatory" is "any question that asks another party to indicate *what* it contends." *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 332 (N.D. Cal. 1985).

*Id.* On this basis alone, the Court agrees with defendants [Doc. No. 36 at pp. 5, 7] and finds that Interrogatory Nos. 1 and 2 are overly broad and unduly burdensome as worded and must be limited to the principal, or material, facts that support plaintiffs' claims or defendant's defense.

The Court finds that defendant's answer to Interrogatory No. 1 would be satisfactory, even in the face of appropriately worded interrogatories. Defendant states that because "[p]ursuant to 29 U.S.C. § 207(k) ('7k exemption'), employees engaged in 'fire suppression activities' are exempt from standard overtime pay . . . . [and] [a]t all relevant times Plaintiff worked as an ERO . . . [Alfaro, therefore,] fell within the 7k exemption." [*Id.* at pp. 4-5]. Defendant's response is an adequate answer to plaintiffs' Interrogatory.

Interrogatory No. 2 asks defendant to disclose "all facts" that support the contention plaintiff, Alfaro, "engaged in 'fire suppression activities'" while an ERO for the SDFD. [*Id.* at p. 6]. Defendant responded that Mr. Alfaro engaged in such activity "[a]t all relevant times . . . based on the job duties, responsibilities, expectations and functions of the ERO position." [*Id.*]. Plaintiffs argue the response is inadequate because it "does not provide actual facts nor specific examples to support [the] contention Plaintiffs engaged in such activities." [*Id.*]. Defendant counters that if plaintiffs wanted the City "to explain, on a day-to-day basis over the course of several years, where and how Plaintiffs engaged in fire suppression activities, . . . the request is overly broad and unduly burdensome." [*Id.* at 7]. Setting aside the Court's earlier finding regarding the boilerplate objection language and the overbroad nature of the Interrogatory, the Interrogatory, as worded, also does not call for the sort of specific answer plaintiffs seek. The City's answer is sufficient.

Plaintiffs' Motion to compel further responses to Interrogatory Nos. 1 and 2 is therefore **DENIED**.

*<u>Plaintiffs' Interrogatory No. 3</u>* asks whether during Mr. Alfaro's employment as an ERO for the SDFD, did he "ever respond to the scene of a fire" as part of those ERO duties. Defendant responded that the "ERO position was a supervisory [one] responsible for command and control of all dispatch floor operations", and then went on to provide a non-

4

exhaustive list of various "duties." [*Id.* at p. 8]. Defendants concluded that "each of the [listed] job functions, as well as the numerous other job functions performed by EROs, responded to the scene of a fire." [*Id.*]. Plaintiffs contend the interrogatory "requires simply a 'yes' or 'no' answer" and a further answer is needed. [*Id.*]. Although plaintiffs' Interrogatory could be answered with a "yes" or "no," defendant is not limited to single word answers. Nonetheless, the response – while informative – is inadequate. Defendant appears to make the point that the phrase in plaintiff's interrogatory, "respond to the scene of a fire," is imprecise and fails to accurately describe the array of responsibilities held by an ERO. While the Court agrees with defendant that its answer need not be circumscribed solely to a "yes" or "no," the Interrogatory plainly requires an affirmative or negative answer. Consequently, plaintiffs' Motion to Compel a further response to Interrogatory No. 3 is **GRANTED**.

*Plaintiffs' Interrogatory No. 5* asks whether plaintiff, Mr. Alfaro, was "required to handle firefighting equipment" as an ERO. [*Id.* at p. 9]. Defendant objected, explaining that Mr. Alfaro was "required to be knowledgeable and capable of using firefighting equipment if the need arose" and that such knowledge would have been acquired by dint of his position as a "fire captain." [*Id.* at p. 10]. Further, Mr. Alfaro was required to "maintain certification of all applicable firefighting equipment." [*Id.*]. Again, defendant's answer is inadequate. One *could* conclude that Mr. Alfaro operated firefighting equipment during his time as an ERO, but plaintiffs ask explicitly whether he did, indeed, do so. Consequently, a further response is required by defendant, and plaintiffs' Motion to Compel regarding Interrogatory No. 5 is **GRANTED**.

*Plaintiffs' Interrogatory No. 6* requests defendant to "list all of [Alfaro's] job duties as an ERO for SDFD." [*Id.* at p. 11]. Defendant directs plaintiffs to review the "lists of job duties which will be produced in response to Plaintiffs' Request for Production of Documents." [*Id.*]. Plaintiffs use their well-worn boilerplate argument that references Rule 33(a)(2). [*Id.*]. Defendant's Response implicitly invokes Rule 33(d), which permits a responding party to direct the interrogator to business records that contain the answer. Fed.

5

3:17-cv-00046-H-KSC

R. Civ. P. 33(d). Directing a party to business records is appropriate if the "burden of deriving or ascertaining the answer is substantially the same for either party." *Id.* Defendant has indicated it is providing the relevant document with the job duties to plaintiffs, and plaintiffs do not claim that the burden of determining the duties is more onerous than it would be for defendants. Defendant's answer is sufficient and the Motion to Compel regarding Interrogatory No. 6 is **DENIED**.

*<u>Plaintiffs' Interrogatory No. 9</u>* asks defendant to "[l]ist each and every date on which [Alfaro] communicated (whether verbally or in writing) with any supervisor about any issue related to his pay." [Doc. No. 36 at p. 12]. Defendant answers that it does not know the full universe of potential communications "at this time," that the City cannot inspect plaintiff's e-mail account as per the agreement of counsel, but, nonetheless, that it will produce "all responsive, nonprivileged written communications in one or more productions to plaintiff's counsel" on an ongoing basis, rather than a list. [*Id.*]. Plaintiffs object, indicating they have not received *any* documents of the kind defendant mentions. Next, they argue that the interrogatory inquires about oral communications. [*Id.*]. In its briefing, defendant states that all defendants "have since provided the email communications agreed to with Plaintiff's counsel" after an in-person meet and confer. [*Id.* at p. 14]. Thus the parties appear to have reached some agreement regarding the written productions.

As to the oral communications, the Court agrees with plaintiffs that it is highly relevant that they "know if, when, and to who they communicated regarding their wages." [*Id.*]. Despite the overbroad nature of plaintiff's Interrogatory – like Interrogatory Nos. 1 and 2, *supra* – defendant must still supplement its production with any potentially "material" oral communications of which the City is aware.[3] These material *oral*

---

[3] The City is not obligated by this Interrogatory to canvas every employee who might have had a conversation with Mr. Alfaro. To do so would be onerous and over burdensome. Moreover, the fluid nature of oral communications are such that this information might be better suited to inquiry during depositions, rather than interrogatories.

communications must be provided to plaintiffs, and on that limited basis, plaintiffs' Motion to Compel regarding Interrogatory No. 9 is **GRANTED**.

***Plaintiffs' Interrogatory No. 13*** asks defendant to "state all facts" that indicate "the date [individuals identified in Interrogatory No. 12] learned that [Alfaro] and others sought unpaid overtime wages from the City." [*Id.* at p. 14]. Defendant answered that all individuals learned of Mr. Alfaro's claim for unpaid wages from a letter sent by Mr. Alan Arrollado. [*Id.* at p. 15]. Plaintiffs' objection focuses on the boilerplate portion of defendant's answer, and does not claim the substantive portion of the answer is inadequate. The Court finds that defendant's answer is sufficient, although the Court would note the Interrogatory asked for a specific date. Presumably the letter is dated and the information is thus readily available to both parties. Plaintiffs' Motion to Compel a further response to Interrogatory No. 13 is **DENIED**.

***Plaintiffs' Interrogatory Nos. 14 and 17***. Interrogatory No. 14 seeks "all facts" that individuals identified in Interrogatory No. 12 relied upon that "militated in favor of" removing plaintiff, Alfaro, from the ERO position. [*Id.* at p. 16]. Defendant answers that there was no specific decision to remove Mr. Alfaro from his position, but rather *all* ERO positions were eliminated in restructuring the SDFD Command & Data Center. [*Id.*]. That decision "was planned prior to Plaintiff's claim for unpaid wages" and "motivated solely by legitimate business reasons." [*Id.*]. Plaintiffs, again, take issue solely with defendant's boilerplate language, and does not indicate any inadequacy in the substantive answer. The Court concludes that defendant has provided a complete answer.

Interrogatory No. 17, like No. 14, asks for "each and every reason each person made the decision to remove [Alfaro] from the ERO position." [*Id.* at p. 17]. It differs in that it inquires about the reasoning of those individuals identified in Interrogatory No. 16 rather than No. 12. [*Id.*]. Defendant's answer is identical to No. 17 and so, too, is the Court's finding.

The Motion to Compel regarding Interrogatory Nos. 14 and 17 is **DENIED**.

***Plaintiffs' Interrogatory Nos. 18 and 19*** ask defendant to state every reason why it did not pay overtime to plaintiff, Mr. Alfaro, prior to the Ninth Circuit's decision in *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014), and still does not pay Mr. Alfaro overtime. The non-boilerplate portions of defendant's responses are identical. [*Id.* at pp. 19, 20]. First, defendant states employees engaged in "'fire suppression activities' are exempt from standard overtime pay" under 29 U.S.C. § 207(k) ("7k exemption"). [*Id.*]. Next, defendant states that "[a]t all relevant times, including before and after publication of [*Haro*]" plaintiff was within the 7k exemption "based on the job duties, responsibilities, expectations and functions of the ERO position." [*Id.*]. Plaintiffs assert the answer is inadequate because it "does not state any facts to support its contention that Plaintiffs [engaged] in fire suppression activities." [*Id.* at p. 21]. The answer to Interrogatory Nos. 18 and 19 states that any of the myriad duties and responsibilities of an ERO falls within the Section 7k exception. If plaintiffs sought specific examples, the Interrogatory could have made such a request through a more concise interrogatory. Plaintiffs' Motion to Compel regarding Interrogatory Nos. 18 and 19 is **DENIED**.

***Plaintiffs' Interrogatory Nos. 20 and 21*** asks whether the City currently pays EROs overtime (No. 20), and if so, why (No. 21). [*Id.* at 22]. The City explains that the ERO position no longer exists, that Battalion Chiefs now perform, in part, the duties of EROs, and that the Battalion Chiefs are paid pursuant to an agreement with the San Diego Firefighters, International Association of Firefighters, Local 145. [*Id.*]. Plaintiff does not object to defendant's substantive portion, and only takes issue with the boilerplate objection paragraphs in each response. The position no longer exists and defendant offers further information regarding how the City pays the individuals that took over ERO responsibilities. Defendant's response is sufficient and so plaintiff's Motion to Compel regarding Interrogatory Nos. 20 and 21 is **DENIED**.

***Plaintiffs' Interrogatory No. 22*** asks defendant to state the "name and position of [your] person most knowledgeable regarding the determination of whether to compensate EROs at a rate of 1.5 times their regular hourly rate of pay for hours worked beyond 40

hours in one week." [*Id.* at p. 24]. Defendant objects, contending the interrogatory seeks information protected by the attorney-client and work-product privileges. [*Id.*]. Defendant asserts the Interrogatory "is asking the City to produce a witness to explain why the City is defending itself in this litigation, instead of agreeing to Plaintiffs (sic) demands to pay them overtime wages." [*Id.* at p. 25]. Defendant's argument is misguided. Plaintiffs seek a name, not a detailed explanation. If at a later date during a deposition, for example, plaintiff seeks additional information, defendant might have a colorable basis to assert either privilege, but it is unavailing at this time. Defendant must provide plaintiff the name of the individual most knowledgeable about the determination of whether to compensate EROs as explained in the Interrogatory. Consequently, plaintiff's Motion to Compel regarding Interrogatory No. 22 is **GRANTED**.

## II. Settlement Negotiation Privilege as Basis for Document Withholding and Redaction

The instant Joint Motion [Doc. No. 38] centers primarily on assertions of the settlement negotiation privilege and the deliberative process privilege (*see* Section III, *infra*). The City asserts several privileges for multiple items in the Privilege Log. Notably, plaintiffs do not contest the City's assertion of the attorney-client privilege or the work-product privilege on *any* item. Accordingly, the Court will not consider any item where defendant has made clear that the attorney-client privilege or the work-product privilege have been asserted in tandem with any other privilege. Even if the Court were to find that the assertion of the settlement negotiation privilege or deliberative process privileges were wrongly made, that finding would not serve to waive the properly made – and uncontested – assertion of the remaining privileges.

Plaintiffs identify a series of documents in defendants' Privilege Log that defendant either did not produce, or redacted, based on an allegedly incorrect assertion of the

9

"settlement negotiation" privilege.[4] [*Id.*]. The 26 "items" at issue, however, were not all redacted or withheld *solely* because of the settlement negotiation privilege. The Privilege Log indicates that the settlement negotiation privilege was the sole privilege asserted for items 1, 2, 4, and 10, which were withheld completely, while item 3 was partially redacted. [Doc. No. 38-3 ("Exhibit B")]. The attorney client and work-product privileges were asserted alongside the settlement negotiation privilege for items 3, 5, 6, 12, 23, 24, 25, 30, 31, 32, 33, 34, 35, 36, 38, and 40. [*Id.*]. And the settlement negotiation privilege was asserted with the deliberative process privilege for items 15, 16, 17, 22, 27, and 29. [*Id.*].

The issue before the court is discoverability, not admissibility. The "settlement negotiation" privilege asserted by defendants emanates – if it exists at all – from Federal Rule of Evidence 408. Rule 408 provides that "conduct or a statement made during compromise negotiations about the claim" is inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). By its own terms, Rule 408 offers no safe harbor from discovery because some information was prepared for, or disclosed during, settlement negotiations. The Advisory Committee Note to the 2006 Amendments makes that clear:

> The sentence of the Rule referring to evidence 'otherwise discoverable' has been deleted as superfluous. . . . *The intent of the sentence was to prevent a party from trying to immunize admissible information, such as a pre-existing document, through the pretense of disclosing it during compromise negotiations*. . . . But even without the sentence, the rule cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations.

Fed R. Evid. 408, Advisory Committee Note to the 2006 Amendments (emphasis added). Thus, any settlement privilege must reside not in the plain text of the Rule, but in the Rule's penumbra. That argument is unpersuasive in this Circuit.

---

[4] The specific Item numbers are: 1, 2, 3, 4, 5, 6, 10, 12, 15, 16, 17, 22, 23, 24, 25, 27, 29, 30, 31, 32, 33, 34, 35, 36, 38, 40. [Doc. No. 38-3].

The Ninth Circuit has not recognized a settlement negotiation privilege that would shield information from discovery as asserted by defendants. [Doc. No. 38 at pp. 8-11]. The Ninth Circuit's ruling in *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1162 (9th Cir. 2007), explained that "statements made in settlement negotiations are only excludable under the circumstances protected by the Rule." The *Rhoades* Court addressed whether Rule 408 permitted it to consider a letter threatening an infringement suit against the plaintiff when evaluating jurisdiction. *Id.* at 1160. The panel held that it did. The Rule is "one of limited applicability," so "[w]hen statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured." *Id.* at 1162; *see also A.D. v. California Highway Patrol*, 712 F.3d 446, 460-61 (9th Cir. 2013) (holding Rule 408 permits district courts to consider settlement offer amounts when determining fee awards). As Rule 408 is not expansive enough to preclude *admissibility* in multiple contexts, extending Rule 408 to prevent the *discoverability* of such information is untenable. Defendant's argument "[q]uite simply . . . is not an accurate statement of the law." *Rhoades* at 1160.

Consequently, it is **ORDERED** that Defendant must produce to plaintiffs a version of item 3 that is free from those redactions predicated on the settlement negotiation privilege. Further, defendant is to produce in their entirety the documents or information identified in items 1, 2, 4, and 10. Defendant's assertion of a settlement negotiation privilege for all other items is unavailing. The Court will consider the other privilege claims for those items in Section III, *infra*.

### III. Deliberative Process Privilege as Basis for Document Withholding and Redaction

Plaintiffs contest defendant's assertion of the deliberative process privilege as a basis to withhold or redact requested, responsive, documents. [Doc. No. 38, at pp. 12-14]. Plaintiffs take issue with every item in the City of San Diego's Privilege Log where it

asserts the deliberative process privilege.[5] [*Id.* at pp. 13-14]. Defendant asserted only the deliberative process privilege for items 11, 13, 14, 41, and a portion of 25. However, the Court's ruling in Section II also renders the deliberative process privilege the single remaining basis for withholding, or redacting, items 15, 16, 17, 22, 27, and 29. Therefore, the Court must consider the appropriateness of the City's deliberative process privilege assertion for items 11, 13, 14, 15, 16, 17, 22, 27, 29, 41, and a portion of 25. For all remaining items, defendants asserted the attorney-client and work-product privileges "in conjunction with" the deliberative process privilege. [*Id.* at p. 14]. As stated above, because plaintiffs do not object to the assertions of attorney-client privilege or work-product privilege for those items, the Court need not determine the appropriateness of the deliberative process privilege claim for those items, here.

The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (*quoting N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)); *see also F.T.C. v. Warner Commc'ns*, 742 F.2d 1156 (9th Cir. 1984). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." *Id.* at 8-9 (internal citations and quotations omitted); *see also Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (explaining that the deliberative process privilege "shields certain intra-agency communications from disclosure to allow agencies freely to explore possibilities, engage in internal debates or play devil's advocate without fear of public scrutiny.").

---

[5] Namely, items 3, 5, 6, 7, 8, 9, 11, 13, 14, 15, 16, 17, 22, 25, 26, 27, 28, 29, 30, 34, 35, 36, 38, 39, 41, 42, 43, 43 (sic), and 44.

Documents must be both "predecisional" and "deliberative" to qualify for the privilege. *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002). A document is predecisional if it was prepared "to assist an agency decisionmaker in arriving at his decision," and deliberative if its release would "expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly of Cal. v. U.S. Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992). "Purely factual material that does not reflect deliberative processes is not protected," but factual material that "is so interwoven with the deliberative material that it is not severable" is protected. *F.T.C.*, 742 F.2d at 1161; *see also Sanchez v. Johnson*, No. C-00-1593 CW (JCS), 2011 WL 1870308, at *5 (N.D. Cal. Nov. 19, 2001 ("[T]he fact/opinion distinction should not be applied mechanically. Rather, the relevant inquiry is whether revealing the information exposes the deliberative process." (internal citations and quotations omitted)).

The burden of establishing the privilege lies with the party asserting it. *North Pacifica, LLC v. City of Pacifica*, 274 F.Supp.2d 1118 (N.D. Cal. 2003). If established, the privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principles." *Sanchez*, 2001 WL 1870308, at * 6. And yet, even when established, it is a qualified privilege that can be overcome. *F.T.C.*, 742 F.2d at 1161. That is, "[a] litigant may obtain deliberative materials [or information] if his or her need for the materials [or information] and the need for accurate fact-finding override the government's interest in non-disclosure." *Id.*

While the Court appreciates the balance that must always be struck when crafting a Privilege Log, the City's Log offers no meaningful insight into the items withheld due to the deliberative process privilege. The City's briefing in the Joint Motion is also of little help to the Court. [Doc. No. 38 at pp. 15-16]. Consequently, to resolve this discovery

dispute, the Court **ORDERS** defendant to provide copies of the disputed documents[6] for *in camera* review on or before **September 28, 2018** at **5:00PM**. Along with these documents, defendant must attach a declaration explaining, where applicable, which portions of these documents it believes to be privileged based on the deliberative process privilege, and therefore not subject to production.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion to compel further discovery responses from defendant, as presented in this Joint Motion [Doc. No. 36] is **GRANTED IN PART AND DENIED IN PART**. To the extent that this Court has ordered further answers, defendant must do so within **14 DAYS** of this Order.

IT IS FURTHER ORDERED that plaintiffs' Motion to compel the production of documents, as presented in the Joint Motion [Doc. No. 38], is **GRANTED IN PART**.

IT IS FURTHER ORDERED that defendant shall lodge with the Court the disputed documents identified in Section III, *supra*, for *in camera* review by the Court on or before **September 28, 2018** at **5:00PM**.

**IT IS SO ORDERED**.

Dated: September 21, 2018

Hon. Karen S. Crawford
United States Magistrate Judge

---

[6] Specifically, items 11, 13, 14, 15, 16, 17, 22, 25, 27, 29, and 41.